Opinion
 

 ASHBY, J.
 

 Plaintiff California School Employees Association sought a writ of mandate (Code Civ. Proc., § 1085) on behalf of its members to review action by defendant Pasadena Unified School District in (1) laying off and (2) reducing the time assignments of, certain classified employees. The trial court treated defendants’ first and second affirmative defenses (failure to state a cause of action) as a general demurrer, sustained the demurrer without leave to amend, and entered an order of dismissal, from which plaintiff appeals. (Code Civ. Proc., §§ 581, subd. 3, 581d.)
 

 Layoffs
 

 Plaintiff’s first cause of action alleged that in May 1975 defendant gave notice to a number of employees that they were laid off; that the reason given for said action was alleged to be a lack of funds; that the notices given and the action taken were unlawful in that there was no lack of funds sufficient to justify the layoff, for the reason that defendant had in its undistributed reserves sufficient funds to maintain all classified employees in their former positions. Plaintiff does not allege that the determination by defendant Pasadena City Board of Education as to the amount needed for reserves was made in bad faith. Defendants admitted
 
 *321
 
 in their answer that for the 1975-1976 school year the district had approximately $100,000 in its general reserves and $1,168,000 in its undistributed reserves, and alleged that the total reserve amounts to approximately 3 percent of the total district budget, a minimum reserve guideline which has been maintained by the board of education for the past three school years.
 

 Education Code section 13746,
 
 [1]
 
 which is applicable to defendants under section 13583.1, permits classified employees to be laid off for lack of work or “lack of funds.” Plaintiff’s basic argument is that there cannot be a “lack of funds” so' long as a reserve account is in existence. Essentially the argument means that there cannot be a lack of funds unless the school district is bankrupt. This contention is obviously without merit.
 

 It would be manifestly contrary to legislative intent to hold that there cannot be a “lack of funds” within the meaning of section 13746 so long as reserve accounts are in existence. The Legislature contemplated the need for reserve accounts. Section 20604 provides: “The budget may also contain an amount to be known as the general reserve in such sum as the governing board may deem sufficient, for the next succeeding fiscal year, to meet the cash requirements to which the district’s credit may be legally extended for that portion of said next succeeding fiscal year until adequate proceeds of the taxes levied for, or apportionment of state funds made to, the district during such succeeding fiscal year are available to the district.” Section 20605 provides: “The budget may also contain an amount to be known as the undistributed reserve. The funds in the undistributed reserve shall be available for appropriation by a two-thirds vote of the members of the governing board, to cover expenditures that have not been provided for or that may have been insufficiently provided for, or for unforeseen requirements as they may arise.”
 

 Plaintiff erroneously argues that “lack of funds” should be interpreted to have the meaning referred' to in section 13583.7, subdivision (c), “an actual and existing financial inability to pay salaries of classified employees.” Section 13583.7 deals with the notice which must be given in the case of certain layoffs. Subdivision (c)
 
 [2]
 
 merely provides that the 30
 
 *322
 
 days’ notice referred to in subdivisions (a) and (b) need not be given “in the event of an actual and existing financial inability to pay salaries of classified employees.”
 

 Plaintiff contends the court should not have deferred to the school board on a question of “statutory interpretation.” The court did not defer to the school board. The court decided the legal issue. The court correctly determined that plaintiff’s interpretation of the statute was completely
 
 [3]
 

 There is a slight suggestion in the record that plaintiff was also attempting to proceed on the theory that if the school board allocated an “unreasonable” amount to the reserves, such action was subject to judicial review. The determination of the amount needed for reserves is committed to the discretion of the board. (§§ 20604, 20605,
 
 supra.)
 
 In our view that determination could not be set aside by a court unless it was “fraudulent or so palpably unreasonable and arbitrary as to indicate an abuse of discretion as a matter of law.”
 
 (City and County of S.F.
 
 v.
 
 Boyd,
 
 22 Cal.2d 685, 690 [140 P.2d 666];
 
 Anderson
 
 v.
 
 Board of Supervisors, 229
 
 Cal.App.2d 796, 798 [40 Cal.Rptr. 541].) The trial court came pretty close to the mark in stating that' it did not feel the board’s decision was reviewable unless the board acted in bad faith. (See
 
 Fuller
 
 v.
 
 Berkeley School Dist., 2
 
 Cal.2d 152, 161 [27 P.2d 109, 40 P.2d 831].) Plaintiff conceded in the trial court that if the school board’s action were reviewable only if it were “a subterfuge of some kind,” plaintiff could not amend its petition to plead so.
 
 [4]
 
 While this statement indicates it is doubtful plaintiff could amend its petition to allege that the amount set aside for reserves was fraudulent or so palpably unreasonable or arbitrary as to indicate an abuse of discretion as a matter of law, the order of dismissal must be reversed as to the second cause of action
 
 *323
 
 discussed
 
 infra,
 
 and under such circumstances plaintiff might as well be given another opportunity to plead its first cause of action.
 

 Plaintiff contends that each laid off employee was entitled to a hearing to determine whether there was a lack of funds necessitating his layoff. This contention is without merit. The layoffs were not for disciplinary reasons, and no right to an individual hearing is necessitated. (Cf. § 13583 (hearing provided in disciplinary action).) Section 13580.1, subdivision (e), also indicates no hearing is required when the cause for layoff is lack of funds.
 
 [5]
 
 The hearing proposed by plaintiff would not be based upon circumstances peculiar to the individual employee but rather the financial condition of the school district as a whole. Due process does not demand such a hearing.
 

 Reduction in Time Assignments
 

 In its second cause of action plaintiff alleged that defendants unlawfully reduced the working hours of a number of classified employees. The trial court disposed of this cause of action by cursory reference to the ruling of another judge in the case of
 
 California Sch. Employees Assn.
 
 v.
 
 Los Angeles City Unified Sch. Dist.,
 
 subsequently decided on appeal at 65 Cal.App.3d 848 [134 Cal.Rptr. 424], That case involved a different problem, however (the authority of the district to order unpaid leaves of absence (see § 13652)), and is not controlling here.
 

 Plaintiff relies upon an opinion of the California Attorney General, issued May 29, 1975, which held that school districts have “no authority” to reduce the hours of classified employees’ regular assignments. (58 Ops.Cal.Atty.Gen. 357 (1975).) The Attorney General held that individual classified employees may be laid off, but their hours may not be unilaterally reduced; rather, reductions in assigned time must be consented to by the employee in lieu of layoff.
 

 The Attorney General’s opinion is technically correct in stating that the' hours of individual'classified employees may not be reduced except
 
 *324
 
 with the employee’s consent in order to avoid interruption of employment by layoff. But the opinion erroneously implies, and plaintiff erroneously leaps to the conclusion, that because such reductions cannot be made
 
 except with the employee’s consent in lieu of layoff,
 
 therefore they cannot be made
 
 at all.
 

 That a reduction in an individual classified employee’s time assignment can. be made only with the employee’s consent in lieu of layoff is supported by consideration of sections 13746, 13580.1, subdivisions (a) and (g), 13737 and 13712. Section 13746 provides in pertinent part: “Classified employees shall be subject to layoff for lack of work or lack of funds. Whenever a classified employee is laid off, the order of layoff within the class shall be determined by length of service. The employee who has been employed the shortest time in the class, plus higher classes, shall be laid off first. Reemployment shall be in the reverse order of layoff.”
 

 Section 13580.1, subdivision (g), provides: “(g) ‘Layoff for lack of funds or layoff for lack of work’ includes any reduction in hours of employment or assignment to a class or grade lower than that in which the employee has permanence, voluntarily consented to by the employee, in order to avoid interruption of employment by layoff.” Several other sections refer to employees who take voluntary reductions in assigned time in lieu of layoff. (§§ 13737, 13712.) “Classification” is defined in section 13580.1, subdivision (a), to mean a position with a designated title and “a regular minimum number of assigned hours per day, days per week, and months per year . . . .” These sections clearly imply that the school district may reduce the time assignments of specific employees within a classification only with their consent, in lieu of layoff. (§§ 13746, 13580.1, subd. (g).)
 

 But this does not mean that there is no way for a school district to accomplish the objective of reducing the time assignments of individual employees within a classification.
 
 [6]
 
 The school district would comply with the statute by offering the reduced assignments to the employees who
 
 *325
 
 would otherwise be laid off. The practical effect of the statutory scheme is simply that the employees whose time assignments are to be reduced must be selected in the same order they would have been selected for layoff under section 13746.
 
 [7]
 

 Although defendants assert in their brief that “all actions taken by the District with regard to time assignments and reclassifications were in accordance with the requirements of Education Code Section 13583.7 and carried the reassignment and reemployment rights of Section 13737 and 13746,” we cannot say that this appears on the face of the pleadings or in matters of which the trial court could take judicial notice on a demurrer. (Code Civ. Proc., §§ 430.30, 430.70.) Therefore the order of dismissal must be reversed.
 

 There was considerable discussion in the trial court as to whether plaintiff’s petition was moot, or whether plaintiff lacked standing, on the ground that any employees who were members of plaintiff' had been retained because of subsequent budget decisions or had voluntarily accepted new assignments. The trial court did not reach that issue since it found no causes of action were stated. Of course, nothing we say here is intended to foreclose that inquiry on remand.
 

 The order of dismissal is reversed and the cause remanded for further proceedings consistent with the views expressed in this opinion.
 

 Kaus, P. J„ and Stephens, J„ concurred.
 

 A petition for a rehearing was denied July 21, 1977, and appellant’s petition for a hearing by the Supreme Court was denied August 25, 1977.
 

 [1]
 

 Hereafter all section references are to the Education Code unless otherwise indicated.
 

 [2]
 

 Subdivision (c) of section 13583.7 provides: “(c) Nothing herein provided shall preclude a layoff for lack of funds in the event of an actual and existing financial
 
 *322
 
 inability to pay salaries of classified employees, nor layoff for lack of work resulting from causes not foreseeable or preventable by the governing board, without the notice required by subsections (a) or (b) hereof.”
 

 [3]
 

 In its minute order the trial court stated: “. . . The existence of reserves does not, as assumed by petitioner [plaintiff], lead automatically to the conclusion that the Board was in error in determining that there existed a ‘lack of funds.’ Reserves are a necessary component of school district budgeting, enabling it to pay expenses pending receipt of tax money, and the provision for the same is within the powers of the Board....”
 

 [4]
 

 “[THE COURT:] Do you want to take another crack at it by repleading?
 

 “MR. MC DIARMID [Counsel for plaintiff]: ... If the Court’s position is that a budgetary determination of lack of funds made by the School Board, unless there is a showing that it is a subterfuge of some kind, is final... I would say that there is no way that I could successfully amend my Petition ....”
 

 [5]
 

 Subdivisión (e) of section 13580.1 provides: “(e) ‘Disciplinary action’ includes any action whereby an employee is deprived of any classification or any incident of any classification in which he has permanence, including dismissal, suspension, demotion, or any reassignment, without his voluntary consent,
 
 except a layoff for lack of work or lack of funds.”
 
 (Italics added.)
 

 [6]
 

 The requester of the Attorney General’s opinion' specifically inquired as to (1) the authority of school districts to reduce the hours of classified employees’ regular assignments and (2) the procedure for exercising such authority. The Attorney General’s opinion stopped with the first question, leaving an erroneous impression that there is no procedure for a school district to accomplish that objective.
 

 [7]
 

 I.e., “the order of layoff within the class shall be determined by length of service. The employee who has been employed the shortest time in the class, plus higher classes, shall be laid off first. Reemployment shall be in the reverse order of layoff.” (§ 13746.)