[Civ. No. 24132. Third Dist. Oct. 30, 1984.]

ST. PAUL FIRE AND MARINE INSURANCE COMPANY,
Petitioner, v.
THE SUPERIOR COURT OF YUBA COUNTY, Respondent;
COUNTY OF YUBA et al., Real Parties in Interest.

1200

COUNSEL

Craig E. Farmer, George E. Murphy and Bolling, Walter & Gawthrop for Petitioner.

No appearance for Respondent.

Dennis A. Barlow, County Counsel, and Timothy P. Hayes, Chief Deputy County Counsel, for Real Parties in Interest.

OPINION

**EVANS, Acting P. J.**—Petitioner seeks a writ of mandate compelling respondent superior court to vacate its order denying petitioner's motion for summary judgment, and to enter a new order granting the motion.

On May 10, 1983, real party in interest, Albert T. Fuhs, commenced an action against real parties in interest, County of Yuba (County) and Bill J. Crenshaw, alleging that he was wrongfully terminated from his employment with the County. At the time of the termination, there existed a policy of insurance issued to the County by petitioner. On September 12, 1983, petitioner initiated the underlying action, seeking a declaratory judgment that it has no obligation to indemnity the County or Crenshaw for their liability, if any, by reason of the termination of Fuhs' employment, and that it has no obligation to defend the County or Crenshaw in the action brought by Fuhs.

Petitioner filed a motion for summary judgment, which was denied by respondent court. On June 25, 1984, petitioner filed the instant petition seeking mandamus relief. On August 2, we notified the parties that we were considering issuing a peremptory writ of mandate in the first instance and that any opposition to the petition was to be filed on or before August 17. Opposition to the petition was filed on August 14. We shall issue a peremptory writ of mandate.

 The insurance policy states that it provides "Comprehensive General Liability Protection," covering the County "and other persons protected under [the] agreement against claims for bodily injury or damage to tangible property resulting from an accidental event." The policy further states that "the accidental event . . . must be something [the insured] didn't expect or intend to happen." Petitioner contends, inter alia, that, since

Fuhs' claims do not arise from an "accidental event," there is no coverage under the policy and petitioner is not obligated to defend the County or Crenshaw in the action brought by Fuhs.

■ In general, "[t]he duty to defend is broad and insurance policies must be interpreted so as to protect the reasonable expectations of the insured. . . . An insurer must defend a suit which *potentially* seeks damages within the coverage of the policy. . . . The obligation to defend is measured by the terms of the policy and the allegations of the complaint against the insured and where the complaint reveals potential liability within the policy, the duty to defend arises. . . . If there is a doubt as to whether the insurer must defend, the doubt should be resolved in the insured's favor." (Italics in original, citations omitted) (*Miller* v. *Elite Ins. Co.* (1980) 100 Cal.App.3d 739, 753 [161 Cal.Rptr. 322].) "But the insurer's obligation is not unlimited; the duty to defend is measured by the nature and kind of risks covered by the policy . . . . [¶] ■ . . . In construing the language of an insurance policy, a court should give the words used their plain and ordinary meaning, unless the policy clearly indicates to the contrary . . . . When the language is clear, a court should not give it a strained construction to impose on the insurer a liability it has not assumed . . . ." (*Giddings* v. *Industrial Indemnity Co.* (1980) 112 Cal.App.3d 213, 218 [169 Cal.Rptr. 278]. See also *Nabisco, Inc.* v. *Transport Indemnity Co.* (1983) 143 Cal.App.3d 831, 836 [192 Cal.Rptr. 207] ["In construing the language of insurance policies, words are given their popular and ordinary meaning."].)

Here, the express terms of the policy extend coverage only for claims against the insured "resulting from an accidental event." ■ In its plain and ordinary sense, "accidental" means "arising from extrinsic causes[;1] occurring unexpectedly or by chance[; or] happening without intent or through carelessness." (Webster's Ninth New Collegiate Dict. (1983) p. 49.) The policy itself states that "the accidental event . . . must be something [the insured] didn't expect or intend to happen."

■ Fuhs' claims against the County and Crenshaw are based on allegations that they wrongfully discharged him and deprived him of the benefit of being rehired by the subterfuge of purporting to eliminate his position as building inspector I. The conduct of the County and Crenshaw which assertedly gave rise to Fuhs' claims must be deemed to have been purposeful. The termination of Fuhs' employment was not an unintentional, unexpected, chance occurrence, and thus there is no potential liability under the insurance policy and petitioner owes no obligation to defend the County or Cren-

shaw.[1] Consequently, petitioner is entitled to summary judgment. This conclusion obviates the need to consider any other issues presented by the petition for writ of mandate.

The petition has been served on respondent court and real parties in interest. ▮ Having received opposition to the petition and having advised the parties that we were considering the issuance of a peremptory writ without first issuing an alternative writ, this court is empowered to issue a peremptory writ of mandate in the first instance. (Code Civ. Proc., § 1088; *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893].)

Let a peremptory writ of mandate issue directing respondent superior court to vacate its order denying petitioner's motion for summary judgment, and to enter a new order granting the motion.

Sparks, J., concurred.

**SIMS, J.**—I concur in the result reached by my colleagues but write separately to address an argument of the county not expressly addressed in the majority opinion.

The county contends that even if its employee, Crenshaw, intentionally performed the alleged acts, "the County may possibly have been unaware of the wrongdoing. Instead the County could have been acting in good faith and thus not have intended the bodily injury as it was accidental."

In order to examine the county's possible liability, it is helpful to look at the complaint. Paragraph V of the first cause of action alleges a campaign of harassment against plaintiff by Crenshaw *during plaintiff's employment with the county.* In paragraph V it is alleged Crenshaw reprimanded plaintiff

---

[1]We note that "[t]he present case is readily distinguishable from [*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263 (54 Cal.Rptr. 104, 419 P.2d 168)] and many of the cases following it, which have broadly interpreted the insurer's duty to defend. [Citations.] In each of these cases, damage of the type covered by the policy had undisputably occurred, and the insurer relied on an unclear exclusionary clause in asserting it was not obligated to defend its insured. Here, on the other hand, the question concerns the scope of the basic coverage itself: [does Fuhs' action] potentially seek to recover for [claims 'resulting from an accidental event'] covered by [the insurance policy]?" (*Giddings* v. *Industrial Indemnity Co., supra,* 112 Cal.App.3d at p. 218.)

We also note that Fuhs alleges that Crenshaw harassed him, and that Fuhs' complaint could be construed to seek damages for emotional distress allegedly caused by that harassment. However, once again, any such claim could not have "resulted from an accidental event." The complaint specifically alleges that "[a]ll of said acts were done with the purpose of harassing" Fuhs.

for leaving the office when plaintiff was ill and suffering from high blood pressure. Assuming plaintiff seeks damages for this campaign of harrassment, coverage for the county is excluded pursuant to the following clear exclusion found on page 4 of the policy: *"Employer's Liability.* We won't cover bodily injuries to anyone employed by you or any other protected person unless they're assumed under a contract or agreement that's not excluded above."

No contract or agreement provided for assumption of liability by county. I do not reach the question whether the county can be held derivatively liable under the Government Code for Crenshaw's intentional campaign of harassment. Suffice it to say that, to the extent paragraph V of the complaint may seek damages from the county for events and injuries that occurred during plaintiff's employment, coverage for any liability is clearly excluded by the above language.

As my colleagues note, read in its entirety the complaint most obviously seeks damages from the county on the theory the board of supervisors wrongfully eliminated plaintiff's job. As plaintiff pleads in paragraph III of his first cause of action, "The reason given for elimination of the position was reduction in the amount of funds in the budget." The county cannot be liable on this theory if the board acted in good faith and for the reason stated. (*California Sch. Employees Assn.* v. *Pasadena Unified Sch. Dist.* (1977) 71 Cal.App.3d 318, 322 [139 Cal.Rptr. 633].) Elimination of plaintiff's position would be unlawful only if the board acted in bad faith, so that elimination of the job on account of a reduction in funds was merely a subterfuge for dismissing plaintiff from employment. (*Ibid.*) However, if the board acted knowingly and in bad faith, it would intend a wrongful act and the wrongful termination of plaintiff's job would not be an "accidental event" under the policy.

The petition of real parites in interest for a hearing by the Supreme Court was denied January 2, 1985.