**AMERICAN EMPIRE SURPLUS LINES INSURANCE CO., Plaintiff,**

v.

**BAY AREA CAB LEASE, INC.; and Kertetter Gardley, as Guardian ad Litem for Shawn J., Defendants.**

**No. C–90–20080–WAI.**

United States District Court, N.D. California.

Feb. 13, 1991.

---

Paul E.B. Glad, Michael A. Barns, Sonnenschein Nath & Rosenthal, San Francisco, Cal., for plaintiff.

Joseph A. Scanlan, Jr., Miller, Morton, Caillat & Nevis, Brian Madden, Madden & Redding, San Jose, Cal., for defendants.

## ORDER

INGRAM, District Judge.

### I.

For the reasons set out below, the motion of plaintiff AMERICAN EMPIRE for SUMMARY JUDGMENT is HEREBY GRANTED.

### II.

This case arises out of a coverage dispute between an insurer and its insured. American Empire Surplus Lines Insurance Co. (American Empire) issued an Owner's, Landlord's & Tenant's Liability policy to defendant Bay Area Cab Lease, Inc. (Cab Co.) for the period covering Sept., 1988 to Sept., 1989.

Between Oct. 20, 1988 and Oct. 26, 1988 Donald Edwards Woods (Woods), one of Cab Co.'s drivers, molested an 8 year old, retarded boy (Shawn J.) in his cab. The assault took place in Palo Alto, in the parking lot of Shawn's school. Cab Co.'s business premises is located in Menlo Park.

Woods was convicted on two felony counts and sentenced to state prison. Shawn, through his guardian ad litem, brought a civil action against Woods, Cab Co., and the school district. The complaint alleges negligence in Woods' conduct towards Shawn, and in Cab Co.'s hiring and supervision of Woods. Shawn also charges Woods, as an agent and employee of Cab Co. and the school district, with an intentional tort; specifically, sexual molestation.

Upon the filing of this civil action, Cab Co. demanded that American assume Cab Co.'s defense. American initially denied coverage but then undertook the defense under a reservation of rights. This is a declaratory relief action seeking a judicial determination that there is no coverage for Shawn's injuries under the policy issued by

American, that American has no duty to defend Cab Co. in the civil suit and that American is entitled to reimbursement for its costs to date.

### III.

The parties do not dispute the facts, as outlined above, which underlie this action. Neither do they dispute the terms of the insurance policy. Because of this, the only issue before the court is whether the negligent hiring and/or supervision of an employee who causes intentional injury to a third party is covered under the terms of the policy.

1. Contract interpretation is an issue of law for the court to decide.

■ The coverage under a written insurance policy is solely a matter for judicial interpretation. *Merced Mutual Ins. Co. v. Mendez,* 213 Cal.App.3d 41, 45, 261 Cal. Rptr. 273 (1989). Therefore, because the court finds that the policy does not provide coverage in this situation, summary judgment should be granted in favor of American.

2. The coverage under this policy only extends to accidents arising on the insured's business premises.

■ The policy issued to Cab Co. is a Landlord's, Owner's & Tenant's policy, and is limited by its terms to "accidents" occurring "on the premises." The type of policy issued to Cab Co. is intended "simply to protect against liability arising from the condition or use of the building as a building [and] must be distinguished from insurance against liability arising from the nature of the enterprise or activity conducted therein." 11 *Couch on Insurance 2d* § 44:379, at 551–552 (Rev. ed. 1982 and supp. 1989). American cites cases from several states and from the 3rd Circuit which hold that injuries which occur away from the insured's business premises are not covered by an Owner's, Landlord's & Tenant's policy. See *Berne v. Continental Ins. Co.,* 753 F.2d 27, 29 (3rd Cir.1985); *Hall v. North East Ins. Co.,* 507 So.2d 255, 257 (La.App.1987); *Harvey v. Mr. Lynn's,*

*Inc.,* 416 So.2d 960, 962 (La.App.1982); *Parliament Ins. Co. v. Bryant,* 380 So.2d 1088, 1089 (Fla.App.1980); *Heritage Ins. Co. v. Bucaro,* 101 Ill.App.3d 919, 57 Ill. Dec. 299, 302, 428 N.E.2d 979, 982 (1981); and *Loker v. Tulane University of Louisiana,* 363 So.2d 1305, 1306 (La.App.1978).

The contract at issue states in relevant part:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of (A) **bodily injury** or (B) property damage, to which this insurance applies, **caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental thereto**

.    .    .    .    .

It seems clear that this language was intended to address the typical "slip and fall" case and was not intended to protect against liability for any and all occurrences which could conceivably arise out of an insured's "use" of its premises. Otherwise, this concededly narrower form of insurance could be extended to cover all aspects of an insured's business operations. Nearly all acts could be said to "arise out of the use of the insured premises" in the sense that all business actions either directly originate from or are ultimately attributable to the "head office." If Cab Co. had wanted to be insured against liability for acts committed by its drivers while off company premises it could have purchased a comprehensive general liability policy.

3. Negligent hiring/supervision is not an "accident," even if it could be said to have occurred "on the premises."

■ It is agreed that the policy covers "occurrences" which arise out of ownership of the insured premises. Cab Co. argues that the act which it is charged with (negligently hiring Woods) fulfills these requirements. Its theory is that the hiring of Woods must have occurred on the business premises and that Woods' molestation of Shawn was an "occurrence arising out ownership"; i.e. that, from Cab Co.'s point

of view, Shawn's injury *was* accidental, since Cab Co. did not intend that he be injured.

However, even if it is accepted that the act of "negligent hiring" is the occurrence which gave rise to Shawn's injuries, this is not a risk that is covered by the policy since it is not an "accident." The hiring of Woods merely created the potential for injury to Shawn but was not itself the cause of the injury. "Courts have consistently drawn a distinction between the immediate circumstances which inflict bodily injury and the antecedent negligence which sets in motion a chain of events leading to that injury." *Maples v. Aetna Cas. & Sur. Co.*, 83 Cal.App.3d 641, 647–648, 148 Cal.Rptr. 80 (1978) ("the term 'accident' unambiguously refers to the event causing damage and not the earlier event creating the potential for future injury"). *See also, State Farm Mut. Auto Ins. Co. v. Longden*, 197 Cal.App.3d 226, 233, 242 Cal.Rptr. 726 (1987), (although a "potential" for liability arose as a result of insured's negligence, there was no "accident" until the claimant was injured.)

In *Foremost Ins. Co. v. Eanes*, 134 Cal. App.3d 566, 570–571, 184 Cal.Rptr. 635 (1982) the insureds loaned a motor home to friends who were subsequently involved in an accident in Mexico. Since the insured's auto insurance did not cover accidents in Mexico, they attempted to argue that the "accident" was their negligent entrustment of the motor home to their friends, which took place in California. This argument was rejected by the court of appeal, stating that "the intentional loaning of a vehicle to friends does not constitute an accident." Likewise, the hiring of Woods could not seriously be characterized as an "accident." (Moreover, even the act which directly caused Shawn's injuries cannot properly be characterized as an accident (since it was intentional).)

4. Damages arising out of an assault are specifically excluded by the clear language of the policy.

■ Finally, injuries caused by assault and/or battery are expressly excluded from coverage:

... no coverage shall apply under this policy for any claim, demand or suit based on assault and battery, and assault shall not be deemed an accident, whether or not committed by or at the direction of the insured.

Although the parties cite no California authority on the issue, a Minnesota case which construes the same exclusion language is helpful. In *Ross v. City of Minneapolis*, 408 N.W.2d 910, 912–913 (Minn. App.1987) the plaintiff was assaulted as he left a city auditorium. The court held that plaintiff's claim against the city was causally connected to an assault or battery and therefore was patently excluded from coverage. The insured's argument that it was entitled to coverage for negligence claims was rejected by the court, which noted that the exclusion applied without regard to the theory of liability asserted against the insured.

In *Minnigh v. American Mfrs. Mutual Ins. Co.*, 713 F.Supp. 366 (C.D.Cal.1989) the district judge granted defendant insurer's motion for summary judgment where plaintiff was a former employee of the insured seeking to collect her wrongful discharge judgment from the defendant insurer. The policy at issue contained an exclusion for injuries "expected or intended from the standpoint of the insured." Plaintiff had attempted to couch her complaint in terms of negligence; specifically, that her employer negligently represented that it would be able to honor her employment contract. The court agreed with the insurer that "plaintiff's discharge was intentional. Recasting the complaint as a pure negligence action does not change this critical fact." *Id.*, at 368.

Cab Co.'s argument is essentially this: We do not dispute that the events happened the way you say they happened and we do not dispute that the insurance policy says what you say it says. However, we believe that the focus of the coverage investigation should be on the acts of the insured and not on the acts of uninsured third parties (i.e. Woods). Therefore, the act for which we are being sued satisfies

both the requirements of the policy: it was unintentional and it took place on the insured premises. That is to say, we did not intend for Woods to molest Shawn when we hired him and we hired him on insured premises.

The court finds this argument to be internally inconsistent, however. Either the act Cab Co. committed was hiring Woods, in which case it probably did take place on the insured premises but it could not have been unintentional (see discussion above *re* "accidentally" hiring someone), *or* the act was the molestation of Shawn, which was probably unintentional ("accidental") (from the standpoint of Cab Co.) but did not take place on the insured premises. In any event, it was not the hiring of Woods, negligent or otherwise, which caused Shawn's injury but rather it merely created the danger that Woods would victimize his passengers.

The court finds defendants' reliance on *Underwriters v. Purdie*, 145 Cal.App.3d 57, 193 Cal.Rptr. 248 (1983) to be misplaced. *Underwriters* was a personal injury action brought by a deliveryman and his wife. The deliveryman was shot by a liquor store clerk with a gun kept on the premises with the permission of the insured store owner. The plaintiffs sued the insured, *inter alia*, for negligently hiring and supervising the clerk who was known to be vicious and violent.

The policy included a firearm exclusion which stated that the policy did not extend to liability arising out of damage caused by possession of a firearm by insured or its agent or employee. The claim was brought under a paragraph which was essentially the same as the one at issue in the case at bar.

The court of appeal held that the exclusion did not preclude coverage because the liability of the insured arose from its independent negligent acts and not from the use of the firearm. The court held that the dispositive issue was whether the events giving rise to liability are indivisibly related to the excluded risk. It then concluded that the policy provides coverage for injury *jointly* caused by an excluded (firearm)

and an insured (negligent hiring) risk, citing a 1973 California Supreme Court opinion which stated that when independent, negligent acts concur to produce one injury, each act should be viewed separately to determine liability. *State Farm v. Partridge*, 10 Cal.3d 94, 109 Cal.Rptr. 811, 514 P.2d 123 (1973).

The arguments implied by the citing of this case fail to counter the conclusion that the policy at issue simply does not extend to liability for negligent hiring. The court has interpreted the policy to extend only to liability arising out of the condition or maintenance of the *building*. Thus, although this might indeed be a case of joint causes, neither of them is an insured cause.

The only real issue that *Underwriters* raises is whether the conclusion that negligent hiring is not covered is an erroneous one. The policy in *Underwriters* contained essentially the same language with regard to coverage for bodily injury and property damage as the policy in the instant case. However, the *Underwriter's* policy was a broader, liability insurance policy and the policy in this case is a concededly narrower Owner's, Landlord's & Tenant's policy.

## IV.

The issue here is not whether Cab Co. should have to answer for its allegedly negligent hiring of potential child molesters to ferry vulnerable children from place to place but rather whether it purchased the right insurance policy to protect itself from liability in the event that something like this occurred. The court finds that it did not.

For the foregoing reasons the motion for SUMMARY JUDGMENT is HEREBY GRANTED.