**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| LIBERTY SURPLUS INSURANCE CORPORATION, a New Hampshire corporation; LIBERTY INSURANCE UNDERWRITERS, INC., *Plaintiffs-Appellees*, <br><br> v. <br><br> LEDESMA AND MEYER CONSTRUCTION COMPANY, INC., a California corporation; JOSEPH LEDESMA, an individual; KRIS MEYER, an individual, *Defendants-Appellants*. | No. 14-56120 <br><br> D.C. No. 2:12-cv-00900-RGK-SP <br><br><br> ORDER CERTIFYING QUESTION TO THE SUPREME COURT OF CALIFORNIA |

Filed August 22, 2016

Before: Thomas I. Vanaskie,[*] Mary H. Murguia, and Paul J. Watford, Circuit Judges.

---

[*] The Honorable Thomas I. Vanaskie, United States Circuit Judge for the U.S. Court of Appeals for the Third Circuit, sitting by designation.

## SUMMARY[**]

### Certification to Supreme Court of California

The panel certified the following question of law to the Supreme Court of California pursuant to Rule 8.548 of the California Rules of Court:

> Whether there is an "occurrence" under an employer's commercial general liability policy when an injured third party brings claims against the employer for the negligent hiring, retention, and supervision of the employee who intentionally injured the third party.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## ORDER

We respectfully request that the Supreme Court of California exercise its discretion to decide the certified question set forth in Part II of this order.

## I

## Caption and Counsel

A.  The caption of the case is:

No. 14-56120

LIBERTY SURPLUS INSURANCE CORPORATION, a New Hampshire corporation; LIBERTY INSURANCE UNDERWRITERS, INC.,

Plaintiffs-Appellees,

v.

LEDESMA AND MEYER CONSTRUCTION COMPANY, INC., a California corporation; JOSEPH LEDESMA, an individual; KRIS MEYER, an individual,

Defendants-Appellants.

B.  The names and addresses of counsel for the parties are:

For *Plaintiffs-Appellees*:

Patrick Peter Fredette and Christopher M. Ryan, McCormick Barstow LLP, 312 Walnut Street, Scripps Center, Cincinnati, OH 45202

For *Defendants-Appellants*:

Michael Bidart, Matthew William Clark, Ricardo Echeverria, and Steven Schuetze, Shernoff Bidart Echeverria Bentley, LLP, 600 S. Indian Hill Blvd., Claremont, CA 91711-5498

C. Designation of party to be deemed petitioner: Defendants-Appellants

## II

### Question Certified

Pursuant to Rule 8.548 of the California Rules of Court, a panel of the United States Court of Appeals for the Ninth Circuit, before which this appeal is pending, respectfully requests that the Supreme Court of California answer the question presented below. This court will accept the decision of the Supreme Court of California on this question. Our phrasing of the question is not intended to restrict the California Supreme Court's consideration of the case. The question certified is as follows:

> Whether there is an "occurrence" under an employer's commercial general liability policy when an injured third party brings claims against the employer for the negligent hiring, retention, and supervision of the

employee who intentionally injured the third
party?

The answer to this question is of exceptional importance to
injured parties, employers, and insurance companies doing
business in California.

### III

### Statement of Facts

In April of 2002, Ledesma & Meyer Construction
Company, Inc., Joseph Ledesma, and Kris Meyer
(collectively "L&M") entered into a Construction
Management Contract with the San Bernardino County
Unified School District to complete construction work at the
Cesar E. Chavez Middle School (the "Project"). In relevant
part, the Construction Contract specified that L&M would
defend and indemnify "the Owner, its officers, employees,
and agents" from all claims resulting from L&M's
negligence, errors, acts, or omissions. The Project began in
June of 2003, and continued into the 2006–2007 school year.

In 2003, L&M hired Darold Hecht and assigned him to
the Project as an Assistant Superintendent. On January 12,
2010, L&M received notice that a tort claim had been filed
against the School District, arising out of allegations that
Hecht sexually abused a 13-year old student at the Middle
School beginning in October of 2006. The School District
tendered the defense and indemnification of the claim to
L&M pursuant to the Construction Contract.

In May of 2010, Jane JS Doe, filed a complaint in state
court (the "Underlying Action"), naming as defendants,

L&M, the School District, Hecht, Joseph Ledesma, Kris Meyer, and others.  Doe amended the complaint twice. The operative complaint in the underlying action alleged claims for Negligence; Negligent Hiring/Retention and Supervision; Violation of the California Education Code; Violation of California Civil and Penal Codes; Intentional Infliction of Emotional Distress; Violation of 42 U.S.C. § 1983; and Battery.[1]

Liberty Surplus Insurance Co. had issued L&M a commercial general liability policy ("General Policy") for the relevant time period.  The General Policy between the parties provided, in pertinent part:

## SECTION I – COVERAGES

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1.  Insuring Agreement

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies. We will have the right and

---

[1] Specifically, Jane Doe's Complaint alleged that L&M "hired owner Joseph Ledesma's . . . brother-in-law, Darold Hecht," with "knowledge that [] Hecht was a registered sex offender who was previously convicted on two different occasion[s] of sexually abusing young girls . . . ."  (ER 130 at ¶ 18.)  The Complaint further alleged that L&M "turned this sexual predator loose on all of the schoolchildren attending [the school], including Jane Doe, and further failed to monitor [] Hecht's conduct or his interaction with the schoolchildren."  (*Id.*)

duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" . . . to which this insurance does not apply. . . .

b. This insurance applies to "bodily injury" and "property damages" only if:

(1) The "bodily injury" . . . is caused by an "occurrence" that takes place in the "coverage territory";

\* \* \*

## SECTION V – DEFINITIONS

. . .

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

(ER 267–68, 289.)

Pursuant to the General Policy, and other insurance policies,[2] both L&M and the School District tendered their defense in the Underlying Action to Liberty Surplus Insurance Corporation and Liberty Insurance Underwriters, Inc. (collectively "Liberty"). Liberty defended L&M under a reservation of rights and denied a defense to the School District on the ground that the School District was not insured under the General Policy. Because Liberty denied a defense to the School District, L&M paid expenses incurred by the School District to defend against Jane Doe's claims, pursuant to the terms of the Construction Contract.

Liberty commenced the current action in the United States District Court for the Central District of California, seeking a declaration that, among other things, it was under no obligation to defend or indemnify L&M or the School District in the Underlying Action. L&M filed a counterclaim, arguing, among other things, that the insurance policies at issue required Liberty to defend or indemnify L&M and the School District in relation to the Underlying Action. After the parties filed cross-motions for summary judgment, the district court entered summary judgment in favor of Liberty. Relying on *Delgado v. Interinsurance Exchange of Automobile Club of Southern California*, 211 P.3d 1083 (Cal. 2009), the district court found that L&M's negligent hiring, retention, and supervision of Hecht was too attenuated from the injury-causing conduct committed by Hecht to constitute

---

[2] In addition to Liberty Surplus Insurance Co.'s General Policy, Liberty Insurance Underwriters, Inc. had issued L&M a commercial umbrella policy ("Umbrella Policy"). Crosby Insurance Inc., L&M's insurance broker, issued Certificates of Insurance stating that the School District was an additional insured. The Certificates of Insurance were issued for informational purposes only, with no authority to change the coverage provided by the policies.

an "occurrence"—defined as an accident—under the General Policy.

## IV

## Explanation of Our Request

We seek the California Supreme Court's determination as to the proper interpretation of liability insurance policies that provide coverage for injuries sustained as a result of an "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (ER 289.) The answer to the certified question will not only determine the outcome of L&M's appeal of the district court's order granting Liberty's motion for summary judgment, but also resolve an unsettled matter of insurance law in California. The certified question is of considerable importance to employers, insurers, and third parties injured by the willful acts of employees. Moreover, we note that the resolution of this question will extend beyond the employment context, affecting many insured entities and persons, and the third parties that are injured by the willful acts of those individuals supervised by the insured. Given the ubiquity of insurance policies that cover "occurrences" in California, this certified question presents an issue of significant precedential and public policy importance.

The Supreme Court of California has yet to address this issue of exceptional importance. Nonetheless, in *Minkler v. Safeco Insurance Co. of America*, when answering a question certified by this Court in the context of a claim for coverage for damages caused by the sexual molestation of a minor, the California Supreme Court signaled the unsettled nature of the

question of whether such intentional abuse constitutes an "occurrence" under a liability policy that defined "occurrence" as an "accident."  232 P.3d 612, 617 n.3 (Cal. 2010).  Because the parties had not addressed this issue, the California Supreme Court declined to do so.  Although declining to address the issue, the Court in *Minkler* cited *Delgado* and *Hogan v. Midland National Insurance Co.*, 476 P.2d 825 (Cal. 1970).  *Delgado* held that an assault and battery committed by the insured did not constitute an "accident" under the liability policy at issue there.  211 P.3d at 1092.  *Hogan*, in pertinent part, held that damages caused by a decision to cut lumber wider than had been specified in order to compensate for a defect in the saw were not the result of an "accident" within the meaning of the liability policy. 476 P.2d at 827.

*Delgado* and *Hogan* thus provide general guidance on the question of whether deliberate conduct constitutes an "accident" under a liability policy.  Neither case, however, addresses the question of whether claims of negligence in hiring, retaining and supervising an employee who commits a sexual assault fall within a policy's coverage for an "occurrence," which is defined as an "accident."

The California Courts of Appeal have also not provided clear guidance on this issue.  In *L.A. Checker Cab Co-op., Inc. v. First Specialty Insurance Co.*, 112 Cal. Rptr. 3d 335, 336 (Cal. Ct. App. 2010), *ordered not to be officially published* (Oct. 27, 2010), the Court ruled that the alleged negligent supervision of a cab driver who intentionally shot a passenger did not constitute an occurrence under the insurance policy.  But the case was ordered not to be published.  In the absence of a controlling decision on this

question, a deep division of the federal district courts of California persists.[3]

Because the Supreme Court of California has not yet directly addressed this issue, and California law is unsettled in this area, certification seems particularly appropriate to determine this consequential matter of state law. *See Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974) (noting that federal certification of state law questions "helps build a cooperative judicial federalism," and is "particularly appropriate" for novel or unsettled questions of state law); *see also Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007) (noting that "the federal character of our judicial system" recognizes that matters of state law should first be decided by state courts when possible, not federal courts) (citations omitted). Accordingly, we respectfully request that your Court accept this important certified question.

---

[3] *Compare Fireman's Fund Ins. Co. v. Nat'l Bank for Coops.*, 849 F. Supp. 1347, 1367–68 (N.D. Cal. 1994) (finding liability under a policy that provided coverage for damages resulting from an "occurrence" where the plaintiff asserted a claim of negligent supervision of an employee who committed fraud), *and Westfield Ins. Co. v. TWT, Inc.*, 723 F. Supp. 492, 495 (N.D. Cal. 1989) (negligent supervision may constitute an "occurrence" under the insurance policy), *with Farmer ex rel. Hansen v. Allstate Ins. Co.*, 311 F. Supp. 2d 884, 893 (C.D. Cal. 2004) (negligent supervision of child molester did not qualify as an "occurrence" for purposes of insurance coverage), *aff'd sub nom. Farmer v. Allstate Ins. Co.*, 171 F. App'x 111 (9th Cir. 2006), *and Am. Empire Surplus Lines Ins. Co. v. Bay Area Cab Lease, Inc.*, 756 F. Supp. 1287, 1290 (N.D. Cal. 1991) (negligent hiring of cab driver who sexually molested a child did not constitute an "accident" for purposes of insurance coverage).

**V**

**Accompanying Materials**

In accordance with California Rule of Court 8.548, the Clerk of this Court is hereby directed to file in the Supreme Court of California, under official seal of the Ninth Circuit, copies of all relevant briefs and excerpts of record, and an original and ten copies of the request with a certification of service on the parties.

Further proceedings before us are stayed pending the Supreme Court of California's decision regarding certification and, in the event the certification is accepted, our receipt of the answer to the question certified.

This case is withdrawn from submission, but we retain jurisdiction over further proceedings after the Supreme Court of California renders a decision or declines to answer the certified question. The parties shall notify the Clerk of this Court within one week after the Supreme Court of California accepts or rejects certification.

If the Supreme Court of California denies the request for certification, this case will be automatically resubmitted upon notice of that denial. If the Supreme Court of California accepts the certified question, the case will be automatically resubmitted upon receipt of the Supreme Court of California's answer to the certified question. Additionally, if our request for certification is accepted, the parties shall file a joint status report with our Court every six months.

**IT IS SO ORDERED.**